# Exhibit H

OCT 11 1972          Files
                                      Mr. Ulman
                                      Mr. Buxton
                                      Miss Paff
                                      Mrs. Gauf

Honorable Antonin Scalia
Chairman, Administrative Conference
     of the United States
726 Jackson Place, N. W.
Washington, D. C. 20506

Dear Mr. Scalia:

    This is in response to the request of your predecessor (Roger C. Cramton) for an opinion regarding the proper interpretation of section 575(b) of Title 5, United States Code. I am informed that you affirm that request. Specifically, we are asked to determine first whether an officer or employee of the Federal Government who is a member of the Council of the Administrative Conference is ineligible to continue as a member upon leaving government employment, and second, whether a nongovernmental member of the Council is ineligible to continue as a member upon assuming federal employment. Although the matter is not free from doubt, it is my opinion that where a member of the Council changes the nature of his employment status (i.e., from government to private, or from private to government), he automatically is ineligible for continued Council membership.

    In reaching this determination, I have examined the memorandum of former Chairman Jerre S. Williams (Mr. Cramton's predecessor), supporting an interpretation contrary to the one to which Mr. Cramton subscribed and to which I now subscribe. I note also that the question has been the subject of various meetings and exchanges of memoranda between the staffs of the Administrative Conference and of this Office.

Section 575(b) of Title 5, United States Code, provides in relevant part:

> "The Conference includes a Council composed of the Chairman of the Conference, who is Chairman of the Council, and 10 other members appointed by the President, of whom not more than one-half shall be employees of Federal regulatory agencies or Executive departments. . . . The term of each member, except the Chairman, is 3 years. . . . However, <u>the service of any member ends when a change in his employment status would make him ineligible for Council membership under the conditions of his original appointment</u>. . . ." (Emphasis added.)

The answer to the question to which I address myself turns on the proper interpretation of the underscored language. In interpreting that language it is helpful to examine briefly the makeup of the Council and the policy considerations underlying section 575(b).

The section expressly provides that not more than one-half (<u>i.e.</u>, five) of the members of the Council may be government employees. While the legislative history leaves considerable doubt as to the true intent of the drafters, it is clear that on its face the section does not expressly limit the number of private members who may serve on the Council. Since there is no such express limitation, Chairman Williams concluded that even though a member resigns government employment, he does not thereby become "ineligible" to continue membership on the Council.

While some of the arguments in support of the Williams position are persuasive, I believe that the better and indeed the correct interpretation of section 575(b) is that urged by Mr. Cramton. In my view the intended meaning of the section is that where a member of the Council changes from government

- 2 -

employment to private employment or vice versa, he becomes ineligible for continued service on the Council. 1/

1. The use in section 575(b) of the language "ineligible for Council membership under the conditions of his original appointment" is both unfortunate and ambiguous; while the language was originally suggested by the Bureau of the Budget in 1964 during the consideration of the legislation by the House Judiciary Committee, I am unaware of any clear expression by the Bureau as to its intended effect. There would seem to be two possible interpretations. Chairman Williams argued that since section 575(b) does not specifically limit the number of private representatives on the Council, a person serving as a government member of the Council who thereafter takes a non-government position is not "ineligible" for continued service on the Council. Chairman Cramton noted that such a construction of the word "ineligible" reads the phrase "under the conditions of his original appointment" out of the section; he argued that the section imposes instead an implied condition on the appointment of any Council member--his continued status as either a government employee or a representative of the public. Without engaging, at least at this point, in semantic discussion of the "clear" meaning of the phrase, I think it obvious that resort to the legislative history is appropriate for clarification.

2. There are clear indications in the legislative history of the Administrative Conference Act that Congress intended section 575(b) to mandate termination of Council membership upon a change either from government to private employment, or vice versa. The primary concern of the Eighty-eighth Congress in its deliberations prior to the enactment of the Act was with the extent of government vis-a-vis public representation on the Council. The bill (S. 1664) that was ultimately passed by the Senate, and considered by the House Judiciary Committee,

---

1/ I distinguish, of course, throughout this opinion between Government members of the Council, i.e., those persons who are "employees of Federal regulatory agencies or Executive departments", and nongovernment members, i.e., all other members of the Council, other than the Chairman.

- 3 -

placed no limitations on the composition of the Council; this
is significant because the major conflict during the Senate
and later the House proceedings, was over whether there would
be sufficient, or indeed any, participation on the Council by
non-government members. The final version of the Senate bill
evidenced the willingness of the Senate to permit the composi-
tion of the Council to be left to the complete discretion of
the President, and it is arguable that it also sanctioned a
Council that was to be predominantly a government effort. 2/

---

2/ Officials from the Bureau of the Budget, appearing for the
Administration, testified that the Conference was to be "a
Government program and Government responsibility, and that it
has got to be preponderantly a Government effort." Hearings
on S. 1664 Before a Subcomm. of the Senate Comm. on the Judiciary,
88th Cong., 1st Sess. 105 (1963). The original draft of S. 1664
provided that both the Conference and the Council would be com-
posed "preponderantly of Federal officials and personnel." The
American Bar Association, however, proposed greater participa-
tion for non-government members, and proposed equal representa-
tion on the Council by government and public members. Hearings
on S. 1664, supra, 125-126. In reporting S. 1664, the Senate
Judiciary Committee decided neither to mandate government pre-
ponderance nor to specify ratios for government and non-government
members either within the Conference or the Council. With re-
spect to the membership of the Conference, the Committee report
called for "sufficient non-agency persons . . . to make possible
effective representation on each organ and suborgan of the Con-
ference." It also suggested the ratio of the 1961-62 temporary
Conference as "a good target." That ratio was 60 percent from
the government sector and 40 percent from the non-government
sector. As to the membership of the Council, the report stated,
"It is likely that Federal officials and personnel will be in
the majority on the Council at most times . . . but we believe
this should be left to the discretion of the President at any
particular time." S. Rep. No. 621, 88th Cong., 1st Sess. 3
(1963). See also Hearings on S. 1664, supra, 13.

- 4 -

The House Judiciary Committee, believing that the Senate bill did not sufficiently deal with the question of government versus public representation, sought to resolve the matter. The Bureau of the Budget had submitted new language which would have required six of the ten Council members to be employees of the Federal government. In conjunction with this provision, the Bureau also introduced the language providing for termination of service whenever a change in employment status would make a member "ineligible under the conditions of his original appointment."

While the Judiciary Committee decided to retain the change-in-employment provision, it rejected the ratio suggested by Budget for a mandate that only a maximum of five government members was permissible. This change reflected the concern of the Committee that non-government representation on the Council might be minimal in the absence of an express provision limiting government membership. To assume, however, that in so drafting the bill the Committee was solely concerned with such representation is to be oblivious of clear statements to the contrary in the legislative history in the House. Indeed, that history seems to indicate that the Committee assumed that the maximum number of government members would always be present on the Council and that it was preferable to limit the number of government members to five, thereby assuring that non-government representation would be at least five. While it would have perhaps been preferable to provide unequivocally that the Council should always have a five-five ratio, I do not think the legislative history permits an inference that because the number of government members on the Council is expressly limited, the intention was to encourage unlimited non-government representation in some instances. The purpose of the approach of the House Judiciary Committee was to "assure that Government employee members shall preponderate, but not overwhelmingly." H. Rep. No. 1565, 88th Cong., 2d Sess. 2 (1964). The Committee report indicates that it conceived of the Council as normally consisting of a ratio of six to five government (including the Chairman) to non-government members, and that the change-in-employment provision was intended to preserve that ratio:

- 5 -

"Amendment No. 5 provides that not more than one-half of the 10 members of the Council to be appointed by the President shall be Government personnel. The ratio of Government to non-Government members of the Council, of which the Chairman of the Conference is also to serve as Chairman, would thus be six to five. This ratio, again, corresponds to that of the Council of the Kennedy Administrative Conference.

"Amendment No. 6 <u>assures preservation of the ratio established by amendment No. 5,</u> by providing that the services of a Council member shall terminate whenever a change in his employment status would make him ineligible for Council membership under the conditions of his original appointment."
H. Rep. No. 1565, 88th Cong., 2d Sess. 3 (1964).
(Emphasis added.)

While it seems clear that section 575(b) does not prohibit, at least as a matter of presidential discretion, a Council composed entirely of non-government members, in my view the underscored language quoted above is a very strong indication that the House Judiciary Committee did not intend that the change-in-employment provision should be interpreted to permit a government member to leave the government and retain his membership on the Council. The Committee at the very least recognized that the ratio would usually be five government to five non-government members, and the language suggests that it did not intend an existing ratio, previously determined by presidential discretion, to be changed by movements of members from the government to the non-government sector and vice versa.

3. Certainly, in reaching my conclusion, I do not suggest that there are not various indicia in the history attending the enactment of the Administrative Conference Act that Congress indeed intended section 575(b) to be interpreted as

- 6 -

urged by Chairman Williams. In limiting only the maximum number of government representatives on the Council, the section necessarily permits any number of non-government members to be on the Council at any time. But I think that any change in what the House Judiciary Committee viewed as the normal ratio (i.e., five to five) of government to non-government members was a matter conceived by the Congress as resting primarily within the discretionary power of the President in appointing Council members, and not on the unpredictable nature of changes in employment status subsequent to original appointments. Additionally, under my interpretation, the President would be free to reappoint a member of the Council who leaves the government for the private sector, since the number of public members is not restricted.

Chairman Williams also asserted that interpretation of section 575(b) to require termination of Council membership upon any change in employment status would have a harmful effect on the three-year rotation principle built into the statute. That principle basically provides that each member shall serve for three years, and that each year approximately one-third of the memberships will terminate; it is argued that upon a change in administration, a large membership changeover will result since most, if not all government members will leave government service. While I agree that this "staggering" approach adds both continuity and stability to the Council, I do not believe the potential disruptive effect on the Council that might occur upon a change of administrations should be regarded as conclusive. By adopting the Williams interpretation of the statute, in the situation hypothesized by him, the Council could conceivably be left to function for a period in which all ten of its members were from the private sector. I find it scarcely conceivable, judging from the tone of the House Report, that the Congress would desire such a ratio, especially where it occurred as a matter of circumstance, instead of as a result of exercise of the discretionary presidential appointment power.

- 7 -

Probably the strongest argument that can be made in favor of the Williams interpretation centers on the use of the word "ineligible" in section 575(b). Clearly the only time a person can be "ineligible" for presidential appointment to the Council is if he is a government employee and there are already five government members on the Council. It may thus be contended that the use of the word "ineligible" relates to the express limitation in section 575(b) on the number of government employees who may serve on the Council. But as stated above, I think the language is clearly ambiguous, and my reading of the legislative history is that such an interpretation of the language was not intended by Congress.

4. In conclusion, it is my opinion that the primary import of section 575(b) is to give the President discretion as to the composition of the Council, subject to the limitation that no more than five members shall be from the government. It seems to me more consistent with the general thrust of the Administrative Conference Act and its legislative history to interpret the reference in section 575(b) to "conditions of his original appointment" as making retention of the particular employment status, government or private, as the case may be, an implied condition of the appointment. I therefore am impelled to reject the other possible interpretation of this phrase, i.e., that the sole implied condition in the appointment of any member is that if at the time of appointment he is privately employed and he later

becomes a government employee while there are five other government members on the Council, his appointment will terminate. 3/

                              Sincerely,

                              Leon Ulman
                              Deputy Assistant Attorney General
                              Office of Legal Counsel

---

3/ In rejecting this interpretation, I note that I have considered and also reject the argument that the phrase could additionally be interpreted to permit the imposition by the President, at the time of the original appointment, of express conditions relating to a change of employment status. I am unaware of any other statute which permits the President to impose conditions on an appointment. There is no indication in the legislative history therefor from the Bureau of the Budget, at the time of hearings on the legislation, that such a presidential power was intended. In addition, since the Conference was established in 1968, I am informed that no Council appointment has contained an express condition as to employment status.