IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROGER SEVERINO,<br><br>   *Plaintiff*,<br><br> v.<br><br>JOSEPH R. BIDEN, JR., in his official capacity as President of the United States; CATHERINE M. RUSSELL, in her official capacity as director of the White House Presidential Personnel Office; GAUTAM RAGHAVAN, in his official capacity as deputy director of the White House Presidential Personnel Office; MATTHEW L. WIENER, in his official capacity as acting Chairman, Vice-Chairman, and Executive Director of the Administrative Conference of the United States; and, UNITED STATES OF AMERICA,<br><br>   *Defendants*. | Civil Action No. 1:21-cv-314-CKK |

**PLAINTIFF'S RESPONSE TO NOTICE OF SUPPLEMENTAL AUTHORITY**

  In *Spicer v. Biden* (ECF No. 19-1, "Op."), another court in this district denied a preliminary injunction against the President's attempted removal of two members of the Naval Academy's Board of Visitors. First, that decision rejects standing arguments materially identical to the ones made here by the government. The court did not adopt the government's argument that "reappointment" is required. *See* ECF No. 17, at 6–10. Instead, the court applied the D.C. Circuit's decision in *Swan v. Clinton*, 100 F.3d 973 (1996), to hold that substantial relief could be obtained against the Board's Chairman and Designated Federal Officer, who prepare meeting agendas and have other "specific duties with respect to their agency." Op. 5. And according to the court, "[t]o the degree that those officials lack the authority to order the other Board members to treat the

plaintiffs as Board members, *Swan* favors reading the plaintiffs' complaint to encompass 'subordinate branch officials not named as parties.'" Op. 5–6 (cleaned up) (quoting *Swan*, 100 F.3d at 980). The court rejected too the government's parallel sovereign immunity and separation-of-powers arguments. *See* Op. 6. Thus, the court did not need to address relief against the President, though it did not question the several precedents issuing such relief. *See* ECF No. 17, at 20–24. Given that Defendant Wiener "preside[s]" over the ACUS Council much like the relevant defendants in *Spicer*, a similar course is appropriate here. *See id.* at 13–18.

On the merits, the court's preliminary decision was not "rooted" only "in basic statutory interpretation." ECF No. 19, at 2. Instead, the court focused on precedents about other statutes and constitutional concerns. The court said that "because [Naval Academy] Board members are plainly executive officials, barring their removal would raise serious constitutional concerns." Op. 10 (cleaned up). Likewise, the court emphasized that "the only role of Board is to advise the president on the performance of a quintessentially executive function: the command and supervision of the Armed Forces." *Id.* Here, by contrast, "ACUS Council members do not exercise any 'quintessentially executive power.'" ECF No. 17, at 44.

Shaded by its constitutional concerns, the court looked to a handful of precedents, none of which interprets the ACUS statute. The court relied on *Parsons*, reading it to hold "that term-of-office provisions do not independently limit the President's removal power." Op. 7. The court also noted that *Myers* (in dicta) echoed *Parsons*. Op. 7–8. But *Parsons* turned on a unique statutory history and involved a core executive official. ECF No. 17, at 32–33; *see also Spicer* ECF No. 7, at 10–11 (D.D.C. No. 21-2493). And whatever *Parsons* and *Myers* said between 1897 and 1926, what matters here is how the public would have understood fixed terms in the 1960s, after *Humphrey's Executor* had "disapproved" of a broad reading of *Myers* and upheld a staggered

2

"fixed term []as necessary to the effective and fair administration of the law." 295 U.S. 602, 624, 626 (1935). *Humphrey's Executor* said that staggered fixed terms—standing alone—were "in accordance with many precedents" and prevented a "complete change [in membership] at any one time." *Id.* at 623–24; *see Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020) (focusing on "the ordinary public meaning of [a statute's] terms at the time of its enactment"); *see also Spicer* ECF No. 7, at 10–14 & n.8 (explaining why "it makes little sense to read a term without a removal provision as a mere limitation yet a term *with* a removal provision as a grant"). *Parsons* is not "controlling." Op. 10.

The court distinguished *Wiener*, saying that decision "found a removal restriction on the rationale that the relevant agency was an adjudicatory body." Op. 9 (cleaned up). But that is why *Wiener* inferred a *term provision*. Here, the term provision is explicitly in the statute, and *Wiener* establishes that a term provision is not subject to an "implied[]" removal power. 357 U.S. 349, 356 (1958). A few years after *Wiener*, Congress set staggered terms of office for ACUS Council members. ECF No. 17, at 19.

Next, the *Spicer* court identified a handful of very recent decisions that "did not strike down their respective term-of-office provisions." Op. 8–9. But those provisions were not challenged in any of those cases, so the Supreme Court had no warrant to strike them down or otherwise address them—particularly because the decisions make it obvious that the Constitution requires at-will removal for the executive officers in those cases. *See Spicer* ECF No. 7, at 14–15.

The court in *Spicer* did not address the long history and established meaning of fixed terms of office. *See* ECF No. 17, at 35–38. Though it dismissed *Marbury*'s description of such terms as "dictum," Op. 9, the court did not suggest that Chief Justice Marshall was wrong about what standard terms of office have always meant. And the court did not dispute that the government's

3

reading would render term provisions essentially surplusage. Op. 10; *see* ECF No. 17, at 38. Nor did it question that the government's reading would render statutory language passed alongside the provision surplusage too. *See* ECF No. 17, at 40–41. Finally, the court did not explain how an agency's independence—the goal of congressionally mandated term provisions—would be furthered by an unfettered presidential power to remove disfavored appointees.

Respectfully submitted,

*/s Christopher Mills*

| | |
|---|---|
| JONATHAN F. MITCHELL | CHRISTOPHER E. MILLS |
| DC Bar No. 496344 | D.D.C. Bar. No. SC0008 |
| Mitchell Law PLLC | Spero Law LLC |
| 111 Congress Avenue, Suite 400 | 1050 Johnnie Dodds Blvd. #83 |
| Austin, Texas 78701 | Mt. Pleasant, SC 29465 |
| (512) 686-3940 (phone) | (843) 606-0640 (phone) |
| (512) 686-3941 (fax) | cmills@spero.law |
| jonathan@mitchell.law | |

January 5, 2022