UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROGER SEVERINO,<br>        Plaintiff,<br><br>    v.<br><br>JOSEPH R. BIDEN, JR.*, et al.*,<br>        Defendants. | Civil Action No. 21-0314 (CKK) |

MEMORANDUM OPINION
(January 19, 2022)

In this case, Plaintiff Roger Severino seeks injunctive and declaratory relief holding

unlawful his removal by President Joseph R. Biden, Jr. from the Council of the Administrative

Conference of the United States ("ACUS").  Plaintiff, an appointee of former President Donald J.

Trump, argues that President Biden had no authority to remove him from the Council because

ACUS' enabling statute provides for a term of office for three years.  *See* 5 U.S.C. § 595(b).

Defendants,[1] on the other hand, insist that Plaintiff's injury cannot be redressed by this Court,

maintaining that the Judiciary lacks the power to issue an order enjoining the President or any

other order granting Plaintiff favorable relief.  In the alternative, Defendants argue that the

statute places no such restriction on the President's removal power, either as a matter of statutory

interpretation or as a matter of constitutional law.  Because the Court agrees that ACUS'

enabling statute does not, by its plain meaning, restrict the President's authority to remove

---

[1] Defendants are:  (1) Joseph R. Biden, Jr., in his official capacity as President of the United
States; (2) Catherine M. Russell, in her official capacity as director of the White House
Presidential Personnel Office; (3) Gautam Raghavan, in his official capacity as deputy director of
the White House Presidential Personnel Office; (4) Matthew L. Wiener, in his official capacity as
acting Chairman, Vice-Chairman, and Executive Director of the Administrative Conference of
the United States; and (5) the United States of America.

members of the Council, and upon consideration of the pleadings,[2] the relevant legal authorities,

the documents themselves, and the record as a whole, the Court shall **GRANT** Defendants' [15]

Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim and **DISMISS**

Plaintiff's [12] Amended Complaint.

## I.        BACKGROUND

### A.  The Administrative Conference of the United States

ACUS is an independent agency created to "study the efficiency, adequacy, and fairness

of the administrative procedure used by administrative agencies in carrying out administrative

programs."  5 U.S.C. § 594(1).  It may advise, "collectively or individually, . . . the President,

Congress, or the Judicial Conference of the United States."  *Id.*  Congress has delegated the

agency no rulemaking, investigatory, enforcement, or adjudicatory authority; as such, it has no

power beyond its advisory role.  *See id.* § 594(1)-(5).

ACUS consists of a managing "Council" and a broader "Assembly."  § 593.  The Council

is comprised of the Chairman plus ten other members who are "appointed by the President" but

not subject to Senate confirmation.  *Id.* § 595(b).  "[N]ot more than one-half [of the Council]

shall be employees of Federal regulatory agencies or Executive departments."  *Id.* "The term of

each member, except the Chairman, is 3 years."  *Id.*  Council membership is part-time and

members of the Council are not compensated for their service.  *See id.*  The Council's powers

---

[2] The Court's consideration has focused on the following documents:
- Plaintiff's Amended Complaint, ECF No. 12 ("Am. Compl.");
- Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim, ECF No. 15 ("Defs.' Mot.");
- Plaintiff's Opposition to Motion to Dismiss, ECF No. 17 ("Opp."); and
- Defendants' Reply Brief in Support of their Motion to Dismiss the Amended Complaint, ECF No. 18 ("Defs.' Repl.").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. See LCvR 7(f).

over ACUS are purely administrative and include, among other things, the power to set the time and place of meetings and approve or revise budgetary proposals.  *See id.*  The Assembly, when in "plenary session" may "adopt such recommendations as it considers appropriate for improving administrative procedure."  *Id.* § 595(a)(1).  It is comprised of "not more than 101 nor less than 75 members," including the eleven members of the Council.  *Id.* § 593(a).  Some members are government officials automatically designated as such by statute, and other non-governmental members may be appointed by the Chairman.  *Id.* § 593(b)(2)-(3).  Members of the Assembly serve for two-year terms and are also uncompensated.  *See id.*

### B.  Plaintiff's Removal and Procedural Background

In March 2017, then-President Trump appointed Plaintiff to serve as Director of the Office of Civil Rights in the Department of Health and Human Services.  ECF No. 9-3, Declaration of Christopher D. Dodge ("Dodge Decl."), Ex. A, at 2.  On July 24, 2020, then-President Trump appointed Plaintiff to the Council.  *See* President Trump Appoints Three New Members to the Council of the Administrative Conference of the United States (July 24, 2020), *available at* https://www.acus.gov/newsroom/news/president-trump-appoints-three-new-members-council-administrative-conference-united (last accessed January 12, 2020 12:44 PM).[3] Five days before President Biden assumed the Presidency, Plaintiff resigned his government service.  Dodge Decl. at 2.  The next day, on January 16, 2021, then-President Trump reappointed Plaintiff to the Council, this time as a private, nongovernmental member. Am. Compl. at ¶ 22.  Defendants maintain, and Plaintiff does not contest, that Plaintiff's second

---

[3]  The Court takes judicial notice of this publication by ACUS itself.  Plaintiff does not contest the circumstances of his initial appointment.

appointment was executed through an appointment affidavit provided by the White House Presidential Personnel Office.  *See* Dodge Decl., Ex. B.

On February 2, 2021, Defendant Gautam Raghavan, Deputy Director of the White House Presidential Personnel Office, emailed Plaintiff the following:

> I am writing on behalf of President Biden to request your resignation from the Administrative Conference of the United States Council by 5:00 p.m. ET tomorrow, Wednesday February 3, 2021.  If you do not resign by that time, your appointment to the Council will be terminated.

Dodge Decl., Ex. B.  When Plaintiff refused to resign, Defendant Raghavan emailed Plaintiff the following day, stating "[a]s indicated in my prior message, effective 5:00 p.m. ET today, your appointment to the ACUS council is terminated."  *Id.*  On February 4, 2021, acting Executive Director Wiener informed ACUS staff that "the President [had] terminated the appointment[] of . . . Roger Severino" and that Plaintiff had "filed suit against the President in the U.S. District Court for the District of Columbia."  Dodge Decl., Ex. C.  Plaintiff pleads that his appointment was, in fact, "terminated" on February 3, 2021.  Am. Compl. at ¶ 27.

Plaintiff filed the instant suit on February 3, 2021 and the operative, Amended Complaint on June 8, 2021.  The complaint alleges one claim, unlawful removal by the President, and relies on three sources of authority to state that claim:  the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*; the Declaratory Judgment Act, 28 U.S.C. § 2201; and *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-91 (1949).  *See* Am. Compl. at ¶ 31. Defendants moved to dismiss Plaintiff's Amended Complaint on July 8, 2021.  With that motion now fully briefed, the Court turns to its resolution.

## II.    LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(1)

On a Rule 12(b)(1) motion, the plaintiff "bears the burden of establishing jurisdiction by a preponderance of the evidence." *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 91-92 (D.D.C. 2020); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  In determining whether there is jurisdiction, the court may "'consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'"  *Coal. For Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)). Courts must accept as true all factual allegations in the complaint and construe the complaint liberally, granting the plaintiff the benefit of all inferences that can be drawn from the facts alleged.  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005); *Koutny v. Martin*, 530 F. Supp. 2d 84, 87 (D.D.C. 2007).

However, "the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001). A court need not accept as true "'a legal conclusion couched as a factual allegation'" or an inference "'unsupported by the facts set out in the complaint.'"  *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (internal quotation marks omitted) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B.  Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed.

R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678. Courts "do not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2015).

When evaluating a Rule 12(b)(6) motion, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [a court] may take judicial notice."  *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997) (citation omitted).  "[W]here a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment."  *Strumsky v. Wash. Post Co.*, 842 F. Supp. 2d 215, 217 (D.D.C. 2012) (citation omitted).  Moreover, a court may judicially notice a fact that is not subject to "reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  *Detroit Int'l Bridge Co. v. Gov't of Can.*, 133 F. Supp. 3d 70, 84 (D.D.C. 2015) (quoting Fed. R. Evid. 201(b)).

### III.   DISCUSSION

**A.  Standing**

Before addressing whether the complaint states a claim, the Court must first resolve whether Plaintiff has Article III standing.  *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94-95 (1998).  To establish standing, Plaintiff must show an "injury in fact" that is "actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (cleaned up).  Plaintiff must also demonstrate that there is "a causal connection between the injury and the conduct complained of" and that the Court can issue relief that would likely redress that injury.  *Id.* at 560-61.  The parties agree that Plaintiff alleges an actual injury, the termination of his appointment, and that the individual Defendants' conduct caused that injury by initiating, conveying, or ratifying the termination.  *See* Defs.' Mot. at 9-10.  The parties contest only whether this Court can fashion a remedy that would redress Plaintiff's alleged injury.

Defendants argue that the Court cannot issue any relief as to the President because "courts cannot directly enjoin or issue declaratory relief against the President."  Defs.' Mot. at 9.  Similarly, Defendants maintain that the Court cannot fashion any relief as against the other individual defendants because they "lack any independent authority to restore [Plaintiff] to the ACUS Council."  *Id.* at 9-10.  Citing *Swan v. Clinton*, 100 F.3d 973, 976 (D.C. Cir. 1996), Plaintiff argues that the Court can, at the very least, "direct the[] defendants [not including the President] to treat Mr. Severino as a current member of the Council, which would likely redress his injury."  Opp. at 2.

In *Swan*, the Court of Appeals confronted the President's removal of a former member of the National Credit Union Administration.  100 F.3d at 976-81.  Without holding that it could order the President to formally reinstate the plaintiff, the court concluded that it could redress the

7

plaintiff's allegedly unlawful removal by ordering the agency's subordinate officials to "treat[]
[him] as a member of the NCUA Board and allow[] him to exercise the privileges of that office."
*Id.* at 980.  The *Swan* court further held that sovereign immunity was no barrier to relief,
because, pursuant to the "*Larson-Dugan* exception, . . . sovereign immunity does not apply as a
bar to suits alleging that an officer's actions were unconstitutional or beyond statutory authority."
*Id.* at 981 (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) and
*Dugan v. Rank*, 372 U.S. 609, 621-23 (1963)).  Recently, the court in *Spicer v. Biden*, No. 21-cv-
2493, 2021 WL 5769458 (D.D.C. Dec. 4, 2021) (DLF) held *Swan* controlled in circumstances
strikingly similar to those here.  *Id.* at 4.

   In *Spicer*, the plaintiffs moved for a preliminary injunction restoring them to their
positions on the Board of Visitors to the United States Naval Academy, from which President
Biden had removed them on September 8, 2021.  *Id.* at *1.  Similar to ACUS, the Board of
Advisors exercises no executive power; it merely advises the President on the Naval Academy's
"curriculum, instruction, physical equipment, fiscal affairs, academic methods, and [any] other
matters relating to the academy that [the Board] decides to consider."  *Id.* (cleaned up).  The
court held that it could fashion *Swan*-like relief because the named defendants other than the
President "to treat the plaintiffs as full members of the Board."  *Id.* at *3.  As such, the *Spicer*
court concluded that it had Article III jurisdiction to address the merits of the plaintiffs' removal
claim.  *Id* at *5.

   The Court agrees with the *Spicer* court that *Swan* controls in circumstances such as these.
As in *Spicer*, Plaintiff was appointed to an independent agency that advises, among others, the
President.  Moreover, as in *Spicer*, Plaintiff has named as a defendant an agency executive who
can "treat [Plaintiff] as [a] full member[] of the [Council]."  *See id.*; *Swan*, 100 F.3d at 979.

Defendant Wiener, as acting Chairman of ACUS, has the power to, among other things, "be the official spokesman for the Conference," "appoint, with approval of the Council, members of committees," and "preside at meetings of the Council and at each plenary session of the Conference.' 5 U.S.C. § 595(c). Although Defendant objects that the Court cannot order such relief because the Amended Complaint does not request "what specific relief is available from which subordinate officials," Defs.' Repl. at 5, *Swan* holds that, in removal cases, the Court is to broadly construe the Amended Complaint's request for any "other and further relief that the Court may deem just, proper, or equitable," Am. Compl. at 8.

As *Swan* explains, "the critical question in determining redressability is not whether subordinate officials have the legal power to remove or reinstate [agency board] members[, but] . . . rather whether injunctive relief could provide [the plaintiff] with an adequate remedy." 100 F.3d at 979. In that regard, *Swan* holds that, even if the head of the agency as a named defendant cannot alone "treat the plaintiff[] as [a] full member[]" of the relevant agency board, the removed plaintiff may nevertheless have standing if "subordinate branch officials not named as parties" *would* have such power. *Id.* at 980. Because the *Swan* court considers de facto, if not de jure, reinstatement to be "adequate," the Court must consider such a remedy against Defendant Wiener, in his official capacity as acting Chairman of the Council of the Administrative Conference of the United States, as "adequate."

*Swan* held that it did not need to reach the jurisdictional question of whether it could enjoin the President, i.e., whether the plaintiff had standing as against the President, before advancing to the merits, in order to avoid "delv[ing] into complicated and exceptionally difficult questions regarding the constitutional relationship between the judiciary and the executive branch." *Id.* at 981. As such, although *Swan*'s jurisdictional approach is binding on the Court,

*see Steel Co.*, 118 S. Ct. at 1011, the Court should note that there is some tension between *Swan*'s jurisdictional approach and the Supreme Court's consistent remonstrance that, to advance the merits for a particular form of relief, "a plaintiff must demonstrate standing separately for each form of relief sought," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citing *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).  Because an injunction against the President could be considered a different "form of relief" from an injunction against subordinate officials to treat the plaintiff as if he still occupied the office at question, the Court shall, out of an abundance of caution, address whether it might have the power to enjoin the President as to removal without making any holding to that effect.

Whether and under what circumstances the judicial power extends to an order enjoining the President is unsettled.  More than a century ago, the Supreme Court held that it did not have jurisdiction to enjoin President Andrew Johnson's administration of the Reconstruction Acts in the wake of the Civil War because the judicial power did not extend to "a bill to enjoin the President in the performance of his official duties."  *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 499-501 (1866).  Notwithstanding the term "official duties," the Court explicitly left open whether the judicial power permits an injunction to perform a "mere ministerial duty."  *Id.* at 499.  A century later, the Court of Appeals concluded that it had the power to enforce a statute requiring him to grant federal employees a pay adjustment or propose an alternative to Congress. *Nat'l Treas. Empls. Union v. Nixon*, 492 F.2d 587, 591-92 (D.C. Cir. 1974).  The Court of Appeals subsequently reaffirmed that "[m]andamus is not precluded" as to a ministerial duty simply "because the federal official at issue is the President of the United States."  *Nat'l Wildlife Federation v. United States*, 626 F.2d 917, 923 (D.C. Cir. 1980).  The Supreme Court continued to leave open this question in *Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992) (plurality

op.) ("We have left open the question whether the President might be subject to a judicial injunction requiring the performance of a purely 'ministerial duty' . . . but in general 'this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties." (quoting *Johnson*, 4 Wall. at 501)).  Nevertheless, the Court of Appeals in *Swan* and in *Newdow v. Roberts*, 603 F.3d 1002 (D.C. Cir. 2010) acknowledged that *Franklin*, particularly Justice Antonin Scalia's concurrence, called into question whether *Nat'l Wildlife* remained good law. 100 F.3d at 978; 603 F.3d at 1013 (citing *Franklin*, 505 U.S. at 827-28 (Scalia, J., concurring in part and concurring in the judgment)).

As a result, this Court in *Lovitky v. Trump*, No. 19-cv-1454, 2019 WL 3068344 (July 12, 2019) *vacated in irrelevant part* 949 F.3d 753 (D.C. Cir. 2020) concluded that Circuit precedent required a holding that the judicial power does not extend to any injunction as to the President themself.  *Id.* at *10; *accord*.  Subsequently, other judges of this court have disagreed.  *See, e.g.*, *Citizens for Responsibility and Ethics in Wash. v. Trump*, 438 F. Supp. 3d 54, 67 (D.D.C. 2020) (ABJ) (determining that the question "remain[s] unsettled"); *Ctr. for Democracy & Tech v. Trump*, 507 F. Supp. 3d 213, 225 (D.D.C. 2020) (TNM) *appeal docketed* No. 21-5062 (D.C. Cir. Mar. 15, 2021) (agreeing that "no Circuit precedent bars the issuance of a declaratory judgment against the President" (emphasis and brackets omitted)); *Spicer*, 2021 WL 5769458 at *2 n.1 ("The Supreme Court 'left open the question whether the President might be subject to a judicial injunction requiring the performance of a purely ministerial duty.'" (quoting *Franklin*, 505 U.S. at 802) (internal quotation marks removed)).  The Court need not resolve the question of whether a court may enjoin the President here because the Court concludes below that ACUS' organic statute imposes *no* duty on the President—ministerial or discretionary.  Rather, the statute leaves the President's removal power untouched.

Moreover, and to be clear, whether the court has jurisdiction to order the President to restore an unlawfully removed official is a separate question from whether a court should issue such an injunction.  As Justice Scalia observed, enjoining the President "would produce [a] needless head-on confrontation[] between [a] district judge[] and the Chief Executive."  *See Franklin*, 505 U.S. at 827 (Scalia, J., concurring in part and concurring in the judgment).  The concurrence in *Swan* was even more pointed—should a court ever find it necessary to enjoin the President himself rather than subordinate officers, the Judiciary "would be headed, in accordance with our temperament, either to the basement or the barricades."  100 F.3d at 989 (Silberman, J., concurring).  Because, as the Court next explains, Plaintiff loses on the merits of his removal claim, this case poses no such grave circumstances.

### B.  Merits

Because the plain meaning of ACUS' enabling statute imposes no removal restriction, Plaintiff loses his removal claim on the merits.  As a starting point, the dearth of specific language as to removal is telling.  As in *Spicer* ACUS' organic statute does not "insulate [Council] members from removal," it is, "in that respect, . . . unlike both Article III of the Constitution, which provides that federal judges 'shall hold their offices during good behavior,' and the many federal statutes that allow only removal for cause."  2021 WL 5769458 at *3 (citations omitted).  Supreme Court precedent teaches that, "as a matter of statutory interpretation, . . . absent [such] a 'specific provision to the contrary, the power of removal from office is incident to the power of appointment.'"  *Carlucci v. Doe*, 488 U.S. 93, 95 (1988) (quoting *Keim v. United States*, 177 U.S. 290, 293 (1900)); *see also Collins v. Yellen*, 141 S. Ct. 1761, 1783 (2021).  This rule of statutory interpretation is longstanding.

In *Parsons v. United States*, 167 U.S. 324 (1897), for example, the Supreme Court squarely held that, as a matter of statutory interpretation, term-of-office provisions are to be read only as a "limitation [on the duration of an appointment], and not of grant" of immunity from removal. *Id.* at 342.  In that case, the Court confronted a statute that provided United States Attorneys "shall be appointed for a term of four years," and concluded that the clause must be "constru[ed] [to mean] . . . no more than a period of four years is permissible, subject, in the meantime, to the power of the [P]resident to remove." *Id.*  Similarly, the Court in *Myers v. United States*, 272 U.S. 52 (1926) held that "*Parsons* governs the construction of all term-of-office provisions, not only the provision that was directly before the *Parsons* Court." *Spicer*, 2021 WL 5769458 at *4 (citing *Myers*, 272 U.S. at 143); *see also Myers*, 272 U.S. at 241 (Brandeis, J., dissenting) (agreeing that "in absence of a provision expressly providing for the consent of the Senate to a removal, the clause fixing the tenure will be construed as a limitation, not a grant").  Consistent with this binding precedent, the Court therefore holds that the provision applicable to Plaintiff, "[t]he term of each member, except the Chairman, is 3 years," does not, as a matter of statutory interpretation, impose a restriction on the President's removal power.[4]

Plaintiff's authority does not support his position.  Contrary to Plaintiff's reading of *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), the Court held in that case that *both* a term-of-office provision *and* a for-cause provision "is enough to establish the legislative intent that the term is not to be curtailed in the absence of such cause." 295 U.S. at 623.  *Kalaris v.*

---

[4]  The Court notes that such a holding is in good company. *See, e.g.*, *Pievsky v. Ridge*, 98 F.3d 730, 734 (3d Cir. 1996) ("It is a long-standing rule in the federal courts that a fixed term merely provides a time for the term to end."); *Stanley v. Gonzales*, 476 F.3d 653, 660 (9th Cir. 2007) (explaining that "appointment to a position for a fixed term does not in itself require that [the appointee] be allowed to serve the term, absent removal for cause"); *Stanley v. Dep't of Just.*, 423 F.3d 1271, 1274 (Fed. Cir. 2005) ("inferior officers may be removed before the end of their statutorily defined term").

*Donovan*, 697 F.2d 376 (D.C. Cir. 1983) confirms the converse of that holding: "where Congress has neither created an Article III court nor established by legislation the terms for tenure *and removal*, the Constitution leaves the tenure of those officers to the discretion of the appointment officer." *Id.* at 398 (emphasis added). *United States v. Wilson*, 290 F.3d 347 (D.C. Cir. 2002) concerns the *length* of a term-of-office provision, not the *removal* of an appointee to a particular office. *See id.* at 361. In *Wiener v. United States*, 357 U.S. 349 (1958), the Court found a removal restriction in a statutory scheme "on the rationale that the [agency] was an adjudicatory body," not due to a term-of-office provision. *Collins v. Yellen*, 141 S. Ct. 1761, 1783 n.12 (2021). Finally, as the *Spicer* court concluded, the "wide array of historical materials" on which Plaintiff relies "cannot trump [] controlling decision[s] of the Supreme Court." 2021 WL 5769458 at *5.

To be clear, the Court's holding here turns on statutory interpretation, not constitutional law. The Supreme Court has consistently held that Congress may "provide tenure protections to certain inferior officers with narrowly defined duties." *Selia Law LLC v. CFPB*, 140 S. Ct. 2183, 2192 (2020) (emphasis removed) (citing *Morrison v. Olsen*, 487 U.S. 654 (1988)). Per Supreme Court and Court of Appeals precedent, however, Congress did not do so here. Therefore, Plaintiff's complaint fails to state a claim upon which relief may be granted.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' [15] Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim and **DISMISSES** Plaintiff's [12] Amended Complaint. An appropriate Order accompanies this Memorandum Opinion.

Dated: January 19, 2022                              /s/
                                                      COLLEEN KOLLAR-KOTELLY
                                                      United States District Judge

14